UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| LIANET ALVAREZ OSARIO,<br><br>9800 Bonaventure Place Apt 1, Louisville, Kentucky 40219<br><br>*Plaintiff*,<br><br>v.<br><br>U.S. CUSTOMS AND BORDER PROTECTION,<br><br>1300 Pennsylvania Avenue NW, Washington, DC 20004<br><br>*Defendant.* | Civil Action No. 23-3779 |

## PLAINTIFF'S ORIGINAL COMPLAINT

> "[S]ensitivity to the interests of the family of the deceased is paramount and all reasonable efforts should be undertaken to notify the family as soon as possible."

-May 26, 2021 CBP memorandum "Notification and Review Procedures for Certain Deaths and Deaths in Custody," Exhibit 1, p. 3.

### I.   INTRODUCTION

1. Plaintiff, Lianet Alvarez Osario, brings this Freedom of Information Act ("FOIA") case against Defendant, U.S. Customs and Border Protection ("CBP" or "Defendant"), to force compliance with Plaintiff's FOIA request for Defendant's investigation records into the January 2, 2023 death of her mother, Idania Osorio Domínguez, in Defendant's custody and care.

2. No one should learn of their mother's death from a press release. No one should learn of their mother's death from a press release issued weeks after her passing. Particularly not when agency policy dictates a swift notification be provided to next of kin. But this is what happened to

1

Plaintiff. Weeks after, Plaintiff learned from a CBP press release that her mother, Idania Osorio Domínguez, a Cuban national, died while in CBP custody in Eagle Pass, Texas, on January 2, 2023. CBP never directly informed Plaintiff of her mother's death.

3. Compounding this failure, Defendant has never told Plaintiff why or how her mother died, despite having undertaken a death investigation.

4. Plaintiff then filed a FOIA request seeking CBP investigation records examining the circumstances of her mother's death. Defendant has never provided a proper determination or released the responsive records. Thus, Defendant has forced Plaintiff to file this lawsuit to learn how and why her mother died.

## II. PARTIES

5. Plaintiff Lianet Alvarez Osario lives in Lexington, Kentucky. She is the next of kin of Idania Osorio Dominuez, the decedent whose records are sought here.

6. Defendant U.S. Customs and Border Protection ("CBP") is a federal agency component headquartered in Washington, D.C. and subject to the Freedom of Information Act, 5 U.S.C. § 552.

## III. JURISDICTION AND VENUE

7. These claims being brought pursuant to 5 U.S.C. § 552(a)(2) and (a)(3)(A), this Court has jurisdiction pursuant to 5 U.S.C. § 552 (a)(4)(B), the Administrative Procedures Act, 5 U.S.C. § 701 *et. seq.*, and U.S.C. § 1331 (federal question) and 28 U.S.C. § 1391(e) (federal agency).

8. This Court has jurisdiction to enjoin the agency from withholding agency records and order production of improperly withheld records. *See* 5 U.S.C. § 552(a)(4)(B) ("the district court of the United States . . . in the District of Columbia, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant.")

9. Because Defendant failed to abide by FOIA's deadlines, all administrative remedies are exhausted, granting this Court jurisdiction to adjudicate this claim.

10. Venue is proper within this District under 28 U.S.C. § 1391(e) and 5 U.S.C. § 552(a)(4)(B).

11. Plaintiff's sought records are kept in Washington, DC.

## IV.   FACTS

### A. Instead of being directly contacted by Defendant within 24 hours, Plaintiff learned of her mother's death weeks later through a CBP press release.

12. Plaintiff knew that on January 2, 2023 her mother was crossing the border at Eagle Pass, Texas, and would be processed by Defendant at the CBP Eagle Pass facility.

13. Plaintiff never heard from her mother again.

14. On January 3, 2023, a woman who had been with her mother at the CBP Eagle Pass facility contacted Plaintiff. She described how Plaintiff's mother had been taken away by CBP after experiencing chest pains. The woman had no further information to provide.

15. Now concerned for her mother's health and safety, Plaintiff frantically contacted Defendant, local Eagle Pass hospitals, and the Cuban embassy in an attempt to locate her mother.

16. For two weeks, Plaintiff continued searching for any sign of her mother.

17. She received no information. Her mother had vanished.

18. On January 15, 2023, still no closer to knowing her mother's location, Plaintiff left her home in Kentucky and began the journey to Eagle Pass, Texas, the last place her mother was seen.

19. While en route to Texas, Plaintiff's sister-in-law contacted Plaintiff to tell her that CBP had released a statement, quoted below, about a woman who died in its custody on January 2, 2023, the last day Plaintiff's mother was seen alive. *See* Exhibit 2.

20. By matching the details provided by her mother's companion with the press release's narrative, Plaintiff finally knew that her Mother had been dead for the past two weeks.

**B. CBP failed to provide the timely communications of Plaintiff's mother's death as required by law and its own policies.**

21.  As required by the Death in Custody Reporting Act ("DCRA"), 42 U.S.C. § 13727, Defendant's detailed policies carefully articulate the required communication and investigative steps to be taken in the event of an in-custody death, such as that of Plaintiff's mother. *See* CBP memorandum, "Notification and Review Procedures for Certain Deaths and Deaths in Custody," published on May 26, 2021.[1] *See* Exhibit 1.

22.  Under the CBP memorandum, "sensitivity to the interests of the family of the deceased is paramount and all reasonable efforts should be undertaken to notify the family as soon as possible." *Id.* at p. 3.

23.  CBP did not notify in fact personally notify Plaintiff, the decedent's next of kin.

24.  CBP policy also dictates communication requirements with other DHS components, Congress, the decedent's embassy, and the media as well as the deadlines by which such communications must be made.

25.  Here, there is no public indication that CBP timely complied with any notification requirements, including the requirement to notify Plaintiff.

**C. Defendant's January 15, 2023 press release, the only description of Plaintiff's mother's death, claims that she died mere minutes after passing a CBP medical examination.**

26.  Plaintiff does not know how her mother died or under what circumstances. Defendant made no effort to alert her after her mother's death or explain why or how she died.

---

[1] https://www.cbp.gov/sites/default/files/assets/documents/2021-Sep/2021_notification-review-procedures-for-certain-deaths-and-deaths-in-custody%20%283%29.pdf.

27. The only account of Plaintiff's mother's death is the short press release published on Defendant's website on January 15, 2023.[2] *See* Exhibit 2.

28. According to Defendant's press release, on January 2nd, 2023, around 10:30 am, Plaintiff's mother—who is never named—crossed the border and entered into Defendant's custody at the Eagle Pass CBP facility.

29. "[Plaintiff's mother] was medically screened at approximately 11:44 a.m., and she informed the Border Patrol processing coordinator that she had high blood pressure and was taking prescribed medication."

30. At 1:33 pm, a CBP-contracted nurse gave Plaintiff's mother a medical assessment. "The nurse practitioner cleared the woman for travel and had her sit on a nearby bench in the out-take area of the processing facility."

31. At 2:09 pm, Plaintiff's mother collapsed.

32. The Defendant's press release claims that its medical personnel called 911 almost immediately and began administering CPR on Plaintiff's mother before attempting to revive her with a defibrillator.

33. Emergency services personnel arrived at 2:27 pm and took Plaintiff's mother to the regional hospital, arriving at around 3:00 pm.

34. Hospital personnel would declare her deceased shortly after her arrival.

### D. CBP policy requires that it already have begun its investigation into Plaintiff's mothers' death.

---

[2] "Apprehended woman dies in Eagle Pass, Texas soft sided facility, despite life-saving efforts." https://www.cbp.gov/newsroom/speeches-and-statements/apprehended-woman-dies-eagle-pass-texas-soft-sided-facility

35.     As quoted in the Office of Professional Responsibility's report on CBP related deaths for the fiscal year of 2021, Congress imposed specific and concrete requirements on CBP to investigate in-custody deaths.[3]

36.     Two of those concrete requirements create records responsive to Plaintiff's FOIA request. As part of its investigation, CBP must "conduct an autopsy as part of a review of the circumstances leading to the death; and . . . with the assistance of independent clinicians, conduct a prompt mortality review of each death, including a review of whether the individual's treatment in detention complied with CBP's standards on Transport, Escort, Detention, and Search (TEDS)." *Id.*

37.     CBP policy also imposes investigation requirements for in-custody deaths. Within "close to 24 hours" of an in-custody death, CBP must conduct an initial investigation of the facts and circumstances leading to the decedent's death. Notification and Review Procedures for Certain Deaths and Deaths in Custody, p. 4.

38.     Upon determining an individual died under reportable circumstances, DHS must conduct a thorough investigation. That investigation includes, among other requirements, "a review to fully document the facts and circumstances surrounding the death including interviewing relevant witnesses, reviewing records, reviewing and preserving video and audio evidence, and obtaining relevant information from medical personnel including autopsy result." *Id.* at 7.

39.     Furthermore, "[t]o the extent an individual dies in-custody while, or after, being detained in a CBP facility," as Plaintiff's mother did, "OPR, in coordination with OCMO, will consult with

---

[3] https://www.cbp.gov/sites/default/files/assets/documents/2023-Feb/2021-opr-cbp-related-deaths-report.pdf, p. 1(quoting The House Report 116-458 and the Joint Explanatory Statement accompanying the Fiscal Year (FY) 2021 Department of Homeland Security (DHS) Appropriations Act (P.L. 116-260)).

an independent clinician who will review the facts and circumstances as documented by OPR's review to assess CBP's compliance with TEDS standards." *Id.*

### E. For months, CBP has ignored Plaintiff's FOIA request for records pertaining to her mother's death.

40. On March 8, 2023, Plaintiff, through counsel, filed an (a)(3) FOIA request with CBP requesting records related to her mother's death and a signed privacy waiver.

41. Plaintiff's FOIA request asked for four categories of CBP records: (1) "records of communication sent or received by CBP Public Affairs Officers" pertaining to the January 15, 2023 press release; (2) "[a]ll records demonstrating CBP's compliance with the CBP policy" for in-custody death notifications and investigations, a category including the records resulting from the mandatory DHS investigations in Plaintiff's mother's death; (3) CBP records showing the number of in-custody deaths since January 1, 2023; (4) other FOIA requests for records pertaining to the death of Plaintiff's mother.

42. Plaintiff's FOIA request asked for expedited processing.

43. On March 9, 2023, Defendant acknowledged Plaintiff's request and assigned it the tracking number CBP-FO-2023-053353.

44. Aside from this acknowledgement letter, Defendant has provided no meaningful response to Plaintiff.

45. Defendant has not provided a full determination in response to Plaintiff's FOIA request.

46. Defendant has not released responsive records in response to Plaintiff's FOIA request.

47. By failing to adhere to FOIA's deadlines, Plaintiff has exhausted all administrative remedies, permitting this Court to exercise jurisdiction over this claim.

48. By refusing to release responsive records, Defendants have also prevented Plaintiff from learning of whether her mother's death justifies a wrongful death lawsuit. Therefore, if necessary,

this failure to alert Plaintiff to her mother's death or timely provide responsive records to her FOIA request will be cited as grounds for tolling the statute of limitations under the Texas fraudulent concealment doctrine.

**F. Recent whistleblower allegations cast doubt on the sufficiency of CBP medical services to immigrants and medical record accuracy.**

49. On November 30, 2023, attorneys from the Government Accountability Project submitted a whistleblower letter to Congress on behalf of their client, a former employee for Loyal Source Government Services, the medical contractor providing services to CBP border facilities.[4]

50. That letter details Loyal Source's gross deficiencies in providing adequate medical services to immigrants passing through CBP facilities, immigrants like Plaintiff's mother. In particular, Loyal Source is alleged to have knowingly understaffed its medical facilities since 2022, with understaffing levels reaching as high as 40%. *Id.* at 7. Sometimes there were even "entire shifts where no [medical] provider is available at all." *Id.*

51. Compounding the significant risk posed by medical understaffing, Loyal Source also refused to keep adequate patient records. Loyal Source employees often failed to use CBP's electronic records system, instead keeping patient files in paper format only. Loyal Source refuses to convert the paper records into electronic format without more money, and hence "the records remain in boxes in storage." *Id.* at 8.

52. The two key failings—understaffing and inadequate records—heightens the need for Plaintiff to access her requested records. Only the results of a careful government investigation can answer the questions raised by her mother's death, such as how she could die so soon after passing a medical examination and why Plaintiff was not immediately alerted.

---

[4] https://whistleblower.org/wp-content/uploads/2023/11/11-30-2023-Hendrickson-Congressional-Disclosure.pdf

## V.  CLAIM FOR RELIEF

### COUNT I: (a)(3) FOIA Violation

53. All above paragraphs are incorporated herein by reference.

54. In March of 2023, Plaintiff made a valid FOIA request under 5 U.S.C. § 552(a)(3) for Defendant records pertaining to her mother's death and other related records.

55. By December of 2023, she has neither received a valid determination nor responsive records.

56. Failing to issue a determination or provide responsive records within nine months of a request violates FOIA.

57. Plaintiff seeks her responsive records, to be produced in the following order:

   a. all investigatory records created by Defendant in its investigation of Plaintiff's mother's death, beginning with her autopsy, and;

   b. all other responsive records related to Plaintiff's mother.

## VI.  RELIEF REQUESTED

WHEREFORE, Plaintiff asks the Court to:

i. declare that Defendant has violated FOIA;

ii. order Defendant to conduct a reasonable search for records responsive to the Plaintiff's FOIA request;

iii. order Defendant to issue a complete determination to Plaintiff;

iv. order Defendant to promptly produce all non-exempt records or portions of records responsive to Plaintiff's FOIA request in the following order;

   a. all investigatory records created by Defendant in its investigation of Plaintiff's mother's death, beginning with her autopsy, and;

      b.   all other responsive records related to Plaintiff's mother;

v. award Plaintiff attorneys' fees and costs; and

vi. award any other relief the Court considers appropriate.

Submitted this 20th day of December 2023.

                                                /s/ Andrew Fels
                                                Andrew Fels, Esq. DC BAR:TN0025
                                                3214 Fountain Park Blvd.
                                                Knoxville, TN 37917
                                                865-567-4881
                                                andrew@alotrlado.org

## CERTIFICATE OF SERVICE

      I hereby certify that a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular United States Mail, postage prepaid. Parties may access this filing through the Court's electronic filing system.

/s/ Andrew Fels
Andrew Fels, Esq. DC BAR:TN0025
3214 Fountain Park Blvd.
Knoxville, TN 37917
865-567-4881
andrew@alotrlado.org